UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUMBERTO CHAVEZ, | No. C-11-0376 EMC |
| Petitioner, | |
| v. | **ORDER DENYING RESPONDENT'S MOTION TO DISMISS** |
| GREG LEWIS, | **(Docket No. 11)** |
| Respondent. | |

The instant case is a state habeas petition. In his petition, Humberto Chavez challenges as unconstitutional the refusal of the state to release him from the Security Housing Unit ("SHU") at Pelican Bay State Prison and return him to general prison population. Mr. Chavez has been housed in the SHU based on an alleged gang affiliation. Mr. Chavez seeks transfer to the general prison population because, in the SHU, he has no access to programs that are critical to his obtaining release on parole. Currently pending before the Court is the state's motion to dismiss. In the motion, the state argues that the federal habeas petition is untimely. The state further argues that, even if not time barred, the habeas petition fails to state a claim for relief because Mr. Chavez is challenging only a condition of confinement.

Having considered the parties' briefs, as well as the oral argument of counsel, the Court hereby **DENIES** the motion to dismiss.

## I. FACTUAL & PROCEDURAL BACKGROUND

As alleged in the petition, Mr. Chavez was convicted of one count of murder in the first degree in 1981. *See* Pet. at 2. In 1990, he was transferred to the SHU at Pelican Bay State Prison,

apparently because he was suspected of being associated with a gang known as "EME" (also known as the Mexican Mafia). *See* Pet. at 7 & Ex. E (CDC-128-G).

In 1991, his status as a gang associate was validated. *See* Pet. at 7 & Ex. F (memo re prison gang validation). In 2002, his status as a gang associated was validated again. *See* Pet. at 7 & Ex. G (CDC-128-B-2).

In March 2007, a corrections officer searched Mr. Chavez's cell and confiscated five items, including pictures depicting the Mactlactlomei symbol, that is, the Mayan symbol for the number 13 (3 dots over two lines). *See* Pet. at 8 & Ex. H (CDC-128 B). According to the officer, the symbol and number correspond to the thirteenth letter of the alphabet, *i.e.*, "M," and "M" in Spanish is pronounced "EME," *i.e.*, the name of the gang with which Mr. Chavez was previously affiliated. The corrections officer also stated that "Southern Mexico or 'Sureño' gang members who associate themselves with the EME prison gang utilize this symbol to show their allegiance and loyalty to the EME." Pet., Ex. H (CDC-128 B). Mr. Chavez was given an opportunity to respond to the charge that he was affiliated with the prison gang. *See* Pet. at 8 & Ex. I (CDC-128 B). On April 17, 2007, the California Department of Corrections & Rehabilitation ("CDCR") concluded that gang validation was appropriate based on items that contained the Mactlactlomei symbol. *See* Pet. at 8-9 & Ex. J (CDC 128-B-2).

On September 24, 2008, Mr. Chavez appeared for his annual review of his custody status. The reviewing committee concluded that it was appropriate to retain Mr. Chavez in the SHU based on his gang affiliation, as validated in 2007. *See* Pet. at 9 & Ex. K (CDCR 128G). Mr. Chavez appealed the decision the very next day, *i.e.*, on September 25, 2008. *See* Pet. at 9 & Ex. L (inmate/parolee appeal form). On September 26, 2008, the Appeals Coordinator for the prison (C.E. Wilber) issued a screening decision which stated in relevant part as follows:

> The enclosed documents are being returned to you for the following reasons:
>
> ***There has been too great a TIME LAPSE between when the action or decision occurred and when you filed your appeal with no explanation of why you did not or could not file in a timely fashion. Time limits expired per CCR 3084.6(c). Therefore, if you would like to pursue this matter further, you must submit an explanation and***

2

> *supporting documentation explaining why you did not or could not file your appeal timely.*
>
> ***RECENT COMMITTEE HEARINGS DO NOT RESTORE YOUR ORIGINAL APPEAL RIGHTS RELATING TO YOUR OCS CONTROLLED VALIDATION.  YOUR TIME TO APPEAL OCS ACTION OF 4-14-07 HAS LONG SINCE EXPIRED.***

Pet., Ex. L (CDC Form 695) (emphasis in original).  The screening decision also included the following note:

> Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d).  This screening decision may not be appealed.  If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents.  You have only 15 days to comply with the above directives.

Pet., Ex. L (CDC Form 695).

   Mr. Chavez provided an explanation to the Appeals Coordinator several days later.  In the explanation, he stated, *inter alia*, that he does not speak or write English.  *See* Pet., Ex. L (letter).  After receiving the explanation, the Appeals Coordinator made a handwritten note on the original screening decision which stated as follows: "EXPLANATION NOTED.  HOWEVER 1 ½ YEARS IS UNREASONABLE WHEN NO CONTACT WAS MADE WITH THE APPEALS OFFICE TO ALERT US TO YOUR NEED OF ASSISTANCE."  Pet., Ex. L (CDC Form 695).

   There is no dispute that the handwritten note was received by Mr. Chavez.  In a letter dated October 8, 2008, his attorney acknowledged the handwritten note.  *See* Pet., Ex. N (letter).  In the same letter, the attorney also asked that the Appeals Coordinator "reinstate[]" Mr. Chavez's appeal because it was not untimely under 15 C.C.R. § 3084.6(c) and because Mr. Chavez had a right to challenge any departmental decision, action, condition, or policy under § 3084.1(a).  *See* Pet., Ex. N (letter).

   Apparently, counsel never obtained a response to the request for reinstatement from the Appeals Coordinator.  Eventually, counsel got in touch with the Litigation Coordinator at Pelican Bay State Prison and, in an e-mail dated January 6, 2009, asked him to "forward a statement regarding PBSP's decision to not re-instate [the] appeal."  Pet., Ex. N (e-mail).  The Litigation Coordinator responded on January 7, 2009, that, as the Litigation Coordinator, he was

> not involved in the inmate appeals process. However, at your request I spoke with [the Appeals Coordinator] and was informed that the appeal was screened out due to missing the time constraints as defined by CCR section 3084.(c)(6). Specifically, it appears as if Mr. Chavez was appealing documents that were given to him more than a year prior. CCR section 3084.6(c) states that an action must be appealed within 15 days. At this time, PBSP Appeal Office staff feel that their decision on the screen-out was appropriate.

Pet., Ex. N (e-mail).

There is no dispute by the parties that, thereafter, Mr. Chavez filed state habeas petitions with the superior court, the appellate court, and finally the California Supreme Court, and that each petition was denied. The relevant dates – also undisputed – are as follows:

|  | **Filed** | **Denied** |
|---|---|---|
| **Superior Court Petition** | April 6, 2009 | July 24, 2009 |
| **Appeals Court Petition** | March 22, 2010 | March 25, 2010 |
| **California Supreme Court Petition** | April 5, 2010 | June 9, 2010 |

After the California Supreme Court denied the state habeas petition, Mr. Chavez filed this federal habeas petition on January 26, 2011.

## II. DISCUSSION

A. Timeliness

The state argues first that Mr. Chavez's federal habeas petition should be dismissed as time barred. Regarding the statute of limitations for habeas petitions, AEDPA provides as follows:

> (d) (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

4

|   |   |   |   |
|---|---|---|---|
| | | (C) | the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or |
| | | (D) | the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. |
| | (2) | | The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. |

28 U.S.C. § 2244(d).

1. <u>Factual Predicate Under § 2244(d)(1)(D)</u>

In its motion, the state argues that § 2244(d)(1)(D) is applicable to the instant case. Mr. Chavez does not dispute this in his papers and conceded so at the hearing. The Court agrees that the controlling provision is (D). Clearly, (B) and (C) have no applicability in the instant case. In addition, (A) appears inapplicable given the Ninth Circuit's holding in *Redd v. McGrath*, 343 F.3d 1077, 1081 (9th Cir. 2003) ("agree[ing] the word 'judgment' in subparagraph (A) refers to the judgment of conviction and sentence and that the words 'direct review' refer to the direct appellate review of that judgment"), *superseded on other grounds as stated in Ruiz v. Sullivan*, No. 1:09-cv-00747 LJO MJS HC, 2010 U.S. Dist. LEXIS 130474, at *7-8 (E.D. Cal. Dec. 9, 2010).

However, the Court does not agree with the state that § 2244(d)(1)(D) bars Mr. Chavez's habeas petition as untimely. According to the state, even though Mr. Chavez is challenging the CDCR's decision of September 24, 2008, to continue his incarceration in the SHU of Pelican Bay State Prison, *see* Pet. at 2, that decision is based on the prison's 2007 gang validation; "[t]hus, all of [Mr.] Chavez's claims became ripe when the prison continued his gang validation on April 16, 2007," and Mr. Chavez was notified of such on July 11, 2007. Mot. at 4-5. The problem with the state's position is that it conflicts with the Ninth Circuit's decision in *Redd*.

In *Redd*, the habeas petitioner challenged the decision of the California Board of Prison Terms that he was unsuitable for parole. The district court held that, under § 2244(d)(1)(D), the "factual predicate" of the petitioner's claims was the board's denial of his administrative appeal and, on appeal, the Ninth Circuit agreed.[1] *See Redd*, 343 F.3d at 1082 (rejecting petitioner's argument that the factual predicate was the California Supreme Court's denial of his state habeas petition). Under *Redd*, therefore, the factual predicate of Mr. Chavez's claim was the denial of his appeal of the September 24, 2008, administrative decision, not the underlying facts.

The Court acknowledges that the facts in the instant case are different from those in *Redd*. Here, the September 24, 2008, administrative decision was based on the gang validation in 2007, an earlier adjudication decision. In *Redd*, there is nothing to indicate that the administrative decision there was, in essence, based on another earlier administrative decision. This factual distinction, however, is not material. The Ninth Circuit did not, in *Redd*, suggest that a court should look at the reasoning or basis underlying an administrative decision. The state has failed to point to any case which would suggest that, where an administrative decision is based on an earlier administrative decision, then the "factual predicate" is the earlier administrative decision.

Ultimately, the state's argument is more of a preclusion-type argument than anything else – *i.e.*, that Mr. Chavez could have, and therefore should have, challenged the 2007 gang validation decision in its immediate aftermath. Preclusion, however, is a different matter from whether there is

---

[1] The Ninth Circuit rejected the petitioner's contention

> that subparagraph (D) does not apply to his petition because it was intended "to cover situations where new facts, i.e., a DNA test not previously capable of being done, are unearthed after normal judicial proceedings have concluded, and to insure that these facts are presented to the court with reasonable diligence." [The petitioner], however, fails to point to any evidence of legislative intent, and we decline to give subparagraph (D) such a narrow reading. We note that four federal courts of appeals have held that subparagraph (D) applies beyond the newly discovered evidence context to habeas petitions challenging the decisions of administrative bodies such as parole and disciplinary boards.

*Redd* 343 F.3d at 1082 n.8.

a limitations bar. To the extent the state wishes to make a preclusion argument on the merits, it may do so but that argument has not been specifically raised in the pending motion to dismiss.

### 2. Final Decision

Of course, that is not the end of the analysis because there is a dispute between the parties over *when* there was a final decision on Mr. Chavez's administrative appeal of September 24, 2008. The state takes the position that there was a final decision on September 26, 2008, when the Appeals Coordinator issued his screening decision. Mr. Chavez, in turn, contends that there was no final decision until the Litigation Coordinator e-mailed his counsel on January 7, 2009. The Court agrees with Mr. Chavez.

As a preliminary matter, the Court notes that the September 26, 2008, letter cannot be deemed the final decision because, on its face, the letter gave Mr. Chavez an opportunity to provide an explanation for his delay in filing the appeal. Implicitly acknowledging such, the state suggested at the hearing that the Court could essentially deem October 8, 2008, to be the date of the final decision – because by that date (as reflected by the October 8, 2008, letter from Mr. Chavez's counsel) it was clear Mr. Chavez knew of the Appeals Coordinator's handwritten note rejecting his explanation for the delay in filing the appeal. In support of this argument, the state points out that the screening decision specifically notes that the decision "may not be appealed." Pet., Ex. L (letter).

The Court is not persuaded. Under California law, "[a] decision attains the requisite administrative finality when the agency has exhausted its jurisdiction and possesses no further power to reconsider or rehear the claim." *SJCBC LLC v. Horwedel*, 201 Cal. App. 4th 339, 351 (2011) (internal quotation marks omitted). Simply because the Appeals Coordinator's screening decision was not appealable to another individual or entity does not mean that the Appeals Coordinator therefore lacked the authority to reconsider his decision.

As to whether Appeals Coordinator had authority to reconsider, the regulations applicable at the time were not clear. Essentially, the regulations were silent on the matter, and nothing about the framework of the regulations was indicative of one way or the other. *See SJCBC*, 201 Cal. App. 4th at 351 (noting that "[f]inality may be defined either expressly in the statutes governing the

administrative process or it may be determined from the framework in the statutory scheme").[2] For example, 15 C.C.R. § 3084.3 (2008), which addressed the screening of appeals, simply specified the circumstances under which an appeal could be rejected during screening. *See id.* § 3084.3(c). The regulation also provided that, "[w]hen rejecting an appeal, the appeals coordinator shall complete an Appeals Screening Form . . . , explaining why the appeal is unacceptable," *id.* § 3084.3(d), but stated nothing about the coordinator's authority to reconsider a screening decision.[3]

In this regard, *Long Beach Unified School District v. State of California*, 225 Cal. App. 3d 155 (1990), is distinguishable. There, there was an express provision in the California Administrative Code which stated that, during a ten-day period, a party could ask for reconsideration of a determination by the state's Board of Control. *See id.* at 169. After the Board of Control made its decision on the plaintiff-school district's claim, "[n]o party requested reconsideration, [and] no statute or regulation provided for further consideration of the matter by the Board," *id.*; thus, the Board decision became final after the ten-day period expired. *See id.* at 169 n.10. In sum, the regulation expressly provided for reconsideration which no party timely sought.

Given the lack of clarity in the regulations as to when a screening decision became final, the Court cannot conclude that the Appeals Coordinator did not have the power to reconsider the claim. *See In re Fain*, 65 Cal. App. 3d 376, 389-90 (1976) (stating that "[a]ny deliberative body – administrative, judicial or legislative – has the inherent power to reconsider an action taken by it . . .

---

[2] In the instant case, the Court looks to the regulations as there is no applicable statute. *See* Cal. Pen. Code § 5058(a) (2008) (providing that "[t]he director may prescribe and amend rules and regulations for the administration of the prisons and for the administration of the parole of persons sentenced under Section 1170 except those persons who meet the criteria set forth in Section 2962").

[3] The inmate appeal regulations have since been amended. As amended, the regulations seem to contemplate the possibility of reconsideration. Section 3084.6(a)(3) provides that, once an appeal is cancelled, an appeal is not accepted *unless* the appeals coordinator or third level Appeals Chief determines in his or her discretion that "cancellation was made in error or new information is received which makes the appeal eligible for further review." 15 C.C.R. § 3084.6(a)(3) (2011); *cf. also* 15 C.C.R. § 3084.6(e) (2011) (expressly providing for appeal of a screening decision that "cancels" an appeal – *e.g.*, if an appeal is "cancelled" based on untimeliness).

Unfortunately, nothing in the legislative history indicates whether the above amendment providing in effect for possible reconsideration was simply a clarification of the existing authority of the appeals coordinator or whether the above amendment constituted a substantive change in the power of the appeals coordinator.

unless reconsideration is precluded by law," *i.e.*, "when the authoritative law intends it to be final"; adding that "[t]he power of administrative reconsideration is consistent with the principle that notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors") (internal quotation marks and emphasis omitted).

Moreover, Mr. Chavez complied with § (d)(1)(D) by acting reasonably – with "due diligence," 28 U.S.C. § 2244(d)(1)(D) (looking at "the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence") – by essentially asking the Appeals Coordinator to reconsider his screening decision and reinstate Mr. Chavez's appeal. Importantly, Mr. Chavez exercised due diligence by raising a nonfrivolous argument for the Appeals Coordinator's consideration – *i.e.*, that the 2008 administrative decision triggered a new time to appeal because it was separate and distinct from the prior 2007 administrative decision. This was not simply a baseless or frivolous attempt by a prisoner to avoid the statute of limitations. Rather, Mr. Chavez had a good faith basis for believing that the Appeals Coordinator might reconsider given the merits of his argument. Finally, the Court notes that, if the Appeals Coordinator did in fact believe his rejection of Mr. Chavez's explanation constituted a final decision, then he easily could have informed Mr. Chavez of that fact rather than remain silent in the face of his request for reconsideration and reinstatement.

Accordingly, the Court agrees with Mr. Chavez that the requisite administrative finality on the screening decision was not reached until January 7, 2009, when the prison Litigation Coordinator communicated to Mr. Chavez's counsel that "PBSP Appeals Office staff feel that their decision on the screen-out was appropriate." Pet., Ex. N (e-mail).

3. <u>Equitable Tolling</u>

The state argues that, even if the final decision was not reached until January 7, 2009, there is still a time bar because some of the time spent during the state habeas petition process should be counted as part of the limitations period.

Ordinarily, the time spent during the state habeas petition process is *not* counted. Title 28 U.S.C. § 2244(d)(2) expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is

pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).  Notably, the "statute of limitations remains tolled [even] during the intervals between the state court's disposition of a state habeas petition and the filing of a petition at the next state appellate level," *Nino v. Galaza*, 183 F.3d 1003, 1005 (9th Cir. 1999) (adding that "[a] contrary construction would be antithetical to the entire theory of state remedy exhaustion and would inevitably lead to the filing of protective federal petitions") – but only if the filing of the appeal is timely.  *See Evans v. Chavis*, 546 U.S. 189, 192 (2006).  Regarding the timeliness of an appeal, the Supreme Court has noted that, in most states, timeliness

> is measured in terms of a determinate time period, such as 30 or 60 days. . . . [H]owever, California has a different rule.  In California, a state prisoner may seek review of an adverse lower court decision by filing an original petition (rather than a notice of appeal) in the higher court, and that petition is timely if filed within a "reasonable time." . . . [T]his distinction [does not make] a difference for AEDPA tolling purposes. . . . California's system is sufficiently analogous to appellate review systems in other States to treat it similarly.  As long as the prisoner filed a petition for appellate review within a "reasonable time," he could count as "pending" (and add to the 1-year time limit) the days between (1) the time the lower state court reached an adverse decision, and (2) the day he filed a petition in the higher state court. . . ."  The fact that California's timeliness standard is general rather than precise may make it more difficult for federal courts to determine just when a review application (i.e., a filing in a higher court) comes too late."  Nonetheless, the federal courts must undertake that task.

*Id.* at 192-93.

Thus, under Supreme Court and Ninth Circuit precedent, time spent during the state habeas petition process *can* under certain circumstances be counted as part of the limitations period – more specifically, where the filing of a state "appeal" is untimely, which, under California law, means that the appellate habeas petition was not filed within a reasonable time.

In the instant case, the state contends that, if the Court were to use January 7, 2009, as the date of the denial of the administrative appeal, the Court should include as part of the limitations period the days between the state superior court's denial of Mr. Chavez's state habeas petition and his filing of the state habeas petition with the court of appeals because the latter filing was not made within a reasonable time.  The state superior court issued its denial on July 24, 2009; Mr. Chavez

10

filed his petition with the state court of appeals on March 22, 2010 – *i.e.*, approximately eight months later.  Counting this time period would put Mr. Chavez past the one-year limitations period.

Mr. Chavez argues, however, that the California Supreme Court implicitly found that he did not unreasonably delay in filing any petition. *See* Opp'n at 4.  In assessing this argument, the Court should first take into account that the California Supreme Court's actual decision on Mr. Chavez's petition simply states that the petition is denied, and nothing more. *See* Pet., Ex. C (order).  The United States Supreme Court has held that, where the California Supreme Court's decision is denied without comment or citation, that does not "automatically warrant a holding that the filing was timely."[4] *Evans*, 546 U.S. at 197.  "In the absence of . . . *clear indication* that a particular request for appellate review was timely or untimely, [a court] must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness." *Id.* at 198 (emphasis added); *Rios v. California Dep't of Corrections & Rehab.*, No.:1:08-cv-01048-AWI-BAK-SMS HC, 2009 U.S. Dist. LEXIS 82923, at *15-16 (E.D. Cal. Sept. 11, 2009) (noting that court must first determine whether state court denied habeas petition as untimely – if so, that is the end of the matter for purposes of statutory tolling; if state court did not expressly deny habeas petition as untimely, then federal court must independently determine whether request for state court collateral review was within reasonable time; citing *Evans*).

Relying on *Trigueros v. Adams*, 658 F.3d 983 (9th Cir. 2011), Mr. Chavez argues that there was a clear indication of timeliness in his case because the California Supreme Court ordered the state to file an answer to his petition as in *Trigueros*.  But *Trigueros* is distinguishable.  In *Trigueros*, there was – as here – a summary denial by the California Supreme Court.  Thus, the Ninth Circuit did not automatically conclude that the California Supreme Court found the petitioner's claim timely.  Nevertheless, the court ultimately held that the California Supreme Court did find the claim timely based on

> compelling factual circumstances int his case signaling that the
> California Supreme Court did consider and reject the State's

---

[4] Indeed, even "a California Supreme Court order denying a petition 'on the merits' does not *automatically* indicate that the petition was timely filed." *Evans*, 546 U.S. at 197 (emphasis in original).

11

> timeliness argument. Specifically, the California Supreme Court requested informal briefing on the merits, *even though the Superior Court made a finding of untimeliness* and the Court of Appeal summarily denied the petition. We find this highly significant. Additionally, *the State briefed the timing issue and [the petitioner] responded. The California Supreme Court thus had before it all of the timeliness arguments from the parties.* Given these factual circumstances, we rely on the California Supreme Court's orders practice explained in [*In re Robbins*, 18 Cal. 4th 770 (1998)[5]] and conclude that it considered [the petitioner's] petition timely because the California Supreme Court had the timeliness question before it, and did not cite to cases involving a timeliness procedural bar.

*Id.* at 990 (emphasis added). In the instant case, neither the superior court nor the appellate court made any finding regarding timeliness; nor is there any indication that the issue of timeliness was briefed for the California Supreme Court. In the absence of these critical facts, the comparison to *Trigueros* is inapposite.

Mr. Chavez, however, asserts a secondary argument which is persuasive. More specifically, Mr. Chavez argues that he is entitled to equitable tolling for the period between the state superior court's denial and his filing of the petition with the court of appeals. *See Holland v. Florida*, 130 S. Ct. 2549, 2554 (2010) ("decid[ing] that the timeliness provision in the federal habeas corpus statute is subject to equitable tolling").

> [A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way, and prevented timely filing. The petitioner must show that the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time. [T]he threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.

*Porter v. Ollison*, 620 F.3d 952, 959 (9th Cir. 2010) (internal quotation marks omitted).

---

[5]
> [W]hen respondent asserts that a particular claim or subclaim should be barred . . . [because it] is untimely, and when, nevertheless, our order disposing of a habeas corpus petition does not impose the proposed bar or bars as to that claim or subclaim, this signifies that we have considered respondent's assertion and have determined that the claim or subclaim is not barred on the cited ground or grounds.

*Robbins*, 18 Cal. 4th at 814 n.34.

In the instant case, Mr. Chavez invokes equitable tolling because he was not represented by counsel during much of that period. *See* Wattley Decl. ¶ 5 (stating that, "[o]nce the Superior Court denied the petition [on July 24, 2009], we had no further contract to continue representing Mr. Chavez in pursuing his habeas petition in the Court of Appeal or Supreme Court until near the end of 2009, when his brother contacted us and asked that we pursue the petition into the appellate courts"). Mr. Chavez also maintains that he had difficulty "understand[ing] and follow[ing] the exhaustion requirements," Opp'n at 3-4, because of his language problems (*i.e.*, he does not speak or write English and could not obtain assistance)[6] and his low IQ (only 55).[7]

The Ninth Circuit has recognized that both language and intellectual difficulties may constitute extraordinary circumstances justifying equitable tolling in the habeas context. For example, in *Mendoza v. Carey*, 449 F.3d 1065 (9th Cir. 2006), the Ninth Circuit held that the "combination of (1) a prison law library's lack of Spanish-language legal materials, and (2) a petitioner's inability to obtain translation assistance before the one-year deadline, could constitute extraordinary circumstances." *Id.* at 1069. The court indicated that the critical question is whether the "language barriers actually prevent timely filing." *Id.* As for intellectual difficulties, the Ninth Circuit noted in *Bills v. Clark*, 628 F.3d 1092 (9th Cir. 2010), that "we . . . have long recognized equitable tolling in the context of a petitioner's mental illness." *Id.* at 1097. The court set out the following two-part test for eligibility for equitable tolling due to mental illness:

> (1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, by demonstrating the impairment was so severe that either
>
> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or

---

[6] *See* Pet., Ex. I (CDC-128 B) (stating that "CHAVEZ admitted he did not know how to speak or write English"; also indicating that translation services were provided); Pet., Ex. K (CDCR 128G) (indicating that "S does not speak English" and that interpreter was provided); Pet., Ex. L (letter to Appeals Coordinator from Mr. Chavez) (stating that "I don't speak or write English so it's hard for me to interpret the documents that are mailed to me [and] there was nobody that could help me in filing this appeal at an earlier time [as] [t]he people around me at the time were in the same situation as I'm in, therefore, being of no help").

[7] *See* Pet., Ex. E (CDC-128G) (stating that "C-file indicates 'S' has an unknown GPL, a BNR IQ of 55, and claims no marketable skills").

13

        (b)    petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.

    (2)    Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Id.* at 1099-100 (emphasis omitted).

In the instant case, Mr. Chavez has asserted both of these grounds in good faith – *i.e.*, his language and intellectual difficulties are both supported by some evidence. *See* notes 5 and 6, *supra*. Accordingly, the Court concludes that his petition should not be dismissed at this juncture and that, instead, he should be entitled to a further development of the record on the issue of equitable tolling and/or an evidentiary hearing. *See Dent v. Knowles*, No. 08-56730, 2011 U.S. App. LEXIS 17800, at *3-4 (9th Cir. Aug. 24, 2011) (stating that, "[c]onsidering Dent proceeded pro se, the medical records and uncontested declarations Dent submitted constitute a good-faith showing of mental incompetence requiring the district court to further develop the record"); *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006) (stating that "[a] habeas petitioner . . . should receive an evidentiary hearing when he makes 'a good-faith allegation that would, if true, entitle him to equitable tolling'").

The state argues against equitable tolling because, despite the claimed impediments, Mr. Chavez was able to, *e.g.*, appeal the September 24, 2008, administrative decision the very next day. He was also able to provide a justification for his delay in appealing only three days after the Appeals Coordinator concluded there was a timeliness problem. *See* Reply at 6; *see also* Pet., Ex. L (administrative appeal, Appeals Coordinator letter, and Mr. Chavez's letter in response). The state's argument is not without some merit. It appears that Mr. Chavez obtained some assistance in doing the administrative appeal in 2008. Arguably, then, he should have been able to obtain similar assistance in conjunction with the state habeas process in 2009 and 2010. As noted above, under *Bills*, in order for a petitioner to be eligible for equitable tolling due to mental illness, he must show, *inter alia*, "diligence in pursuing the claims to the extent he could understand them [and] that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, *including reasonably available access to assistance*." *Bills*, 628 F.3d at 1100

14

(emphasis omitted and added); *cf. Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009) (noting that, "during the same period of time Ramirez claims that he was 'unable to prepare' his federal habeas petition due to limited library and copier access, he filed a lengthy and well-researched motion in federal court requesting the limitations period be tolled, and a successful discovery motion in the California Superior Court[;] Ramirez offers no explanation of how or why his restricted library access made it impossible for him to file a timely § 2254 petition but not these other substantial legal filings"). Even so, that the state's argument does not obviate the utility and need of a factual record and/or an evidentiary hearing. For example, it is not clear who helped Mr. Chavez back in 2008 and whether that person was available to him in 2009 and 2010. Similarly, that Mr. Chavez's brother ultimately rehired counsel to continue to represent Mr. Chavez in the state appellate court habeas petition does not necessarily establish Mr. Chavez had access to his brother's assistance at the time in question.

      This is not to say that Mr. Chavez would necessarily prevail even if he were able to show that he did not have reasonably available access to assistance during the relevant timeframe. For example, to justify equitable tolling based on a mental impairment, a petitioner must show that the mental impairment was a "but-for cause of any delay." *Bills*, 628 F.3d at 1100. Mr. Chavez appears to have staked out the position that "his language and intellectual difficulties made it difficult for [him] *to understand and follow the exhaustion requirements*." Opp'n at 3-4 (emphasis added). He has not expressly contended that these difficulties made it hard for him to, *e.g.*, prepare the appellate court petition (perhaps because, even with those difficulties, all that he had to do was, in essence, recycle his superior court petition). *See Bills*, 628 F.3d at 1099-100 (stating that a petitioner claiming equitable tolling based on mental incompetence must show either that "petitioner was unable rationally or factually to personally understand the need to timely file" or "petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing"). If Mr. Chavez is in fact limiting his position to the above – *e.g.*, the language and intellectual difficulties made it difficult for him to understand that he had to continue to "appeal" his state habeas petition – then there may be a causation problem because, plausibly, his counsel for the superior court petition (who is counsel of record and who was later re-retained by Mr. Chavez and/or

15

his brother to represent him in the appellate state habeas proceedings) told him at the end of the engagement about the need to "appeal" in a timely fashion.  The Court, however, expresses no ruling on this matter as the evidentiary record on this point has not been developed.  At this juncture, the Court need only conclude that Mr. Chavez should be given an opportunity to further develop the record on the issue of equitable tolling and/or to have an evidentiary hearing.

B.     Condition of Confinement v. Parole Release

Finally, the state argues that, even if there is no time bar, Mr. Chavez's habeas petition should be dismissed because he is challenging only a condition of confinement and habeas relief is available only where the petitioner would obtain immediate or speedier release from prison.

As a preliminary matter, the Court should note that, according to the state, "'habeas jurisdiction is absent, and a [42 U.S.C] § 1983 action proper, where a successful challenge to a prison condition will not *necessarily* shorten the prisoner's sentence.'"  Mot. at 7 (quoting *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003)) (emphasis added).  While the state has accurately quoted *Ramirez*, the significance of that quote should not be overstated as, earlier in the same opinion, the Ninth Circuit stated that "a prisoner may seek a writ of habeas corpus under 28 U.S.C. § 2241 for 'expungement of a disciplinary finding from his record if expungement is *likely to accelerate* the prisoner's eligibility for parole.'"  *Id.* at 858 (emphasis added).  In *Docken* v. *Chase*, 393 F.3d 1024 (9th Cir. 2004), a case that post-dates *Ramirez*, the Ninth Circuit reaffirmed that it is "the *likelihood* of the effect on the overall length of the prisoner's sentence [that] determines the availability of habeas corpus."  *Id.* at 1028 (9th Cir. 2004); *see also Bailey v. Swarthout*, No. CIV S-10-2454 KJM GGH P, 2011 U.S. Dist. LEXIS 102538, at *6-8 (E.D. Cal. Sept. 12, 2011) (report and recommendation) (discussing *Ramirez* and *Docken* along these lines).

To the extent the state argues that the Supreme Court imposed a "necessary" requirement in *Wilkinson v. Dotson*, 544 U.S. 74 (2005), that does not appear correct.  *Wilkinson* focused on the point that "a state prisoner's *§ 1983* action is barred (absent prior invalidation) . . . if success in that action would necessarily demonstrate the invalidity of confinement or its duration."  *Id.* at 81-82 (emphasis added).  As the Ninth Circuit pointed out in *Docken*,

16

> although Supreme Court case law makes clear that § 1983 is not available where a prisoner's claim "necessarily" implicates the validity or duration of confinement, it does not set out any mirror-image limitation on habeas jurisdiction. The Court's central concern, in all of the cases cited above, has been with how far the general remedy provided by § 1983 may go before it intrudes into the more specific realm of habeas, not the other way around. . . . Put simply, when the Supreme Court has concerned itself with the interaction between § 1983 and habeas, it has looked in only one direction.

*Docken*, 393 F.3d at 1028. Although *Docken* pre-dated *Wilkinson*, the above comment is still apt. The Ninth Circuit's observation in *Docken* remains valid: "[T]here are some circumstances concerning prison conditions in which both habeas corpus and § 1983 suits may lie – that is, that the two remedies are not always mutually exclusive so long as the 'core' or 'heart' of habeas corpus is not implicated."[8] *Id.* at 1027. The same point was recently made in *Ayala v. Horel*, No. C 09-3170 SBA (PR), 2011 U.S. Dist. LEXIS 34087, at *5-6 (N.D. Cal. Mar. 30, 2011).

With this understanding, the Court rejects the state's argument that Mr. Chavez's habeas petition should be dismissed because it is challenging only a condition of confinement. As noted above, it is "the *likelihood* of the effect on the overall length of the prisoner's sentence [that] determines the availability of habeas corpus." *Docken*, 393 F.3d at 1028; *see also Flores v. Lewis*, No. C 10-2773 RMW (PR), 2011 WL 2531240, at *4 (N.D. Cal. June 24, 2011) (following "likelihood" standard articulated in *Docken*); *Takechi v. Lewis*, No. C 10-3777 LHK (PR), 2011 U.S. Dist. LEXIS 56514, at *3-4 (N.D. Cal. May 24, 2011) (same).

In the instant case, Mr. Chavez has explained in his petition why he wants a transfer out of the SHU and into the general prison population – *i.e.*, because, *in order to be released on parole*, "he needs to participate in rehabilitative self-help and vocational programming" but "[h]e has no access

---

[8] Some district courts have also found *Ramirez*'s "necessary" requirement to be dicta because it was a § 1983 case. *See, e.g.*, *Drake v. Felker*, No. 2:07-cv-00577 (JKS), 2007 U.S. Dist. LEXIS 91585, at *5 (E.D. Cal. Dec. 13, 2007) ("Despite *Docken*'s careful choice to distinguish *Ramirez*, the Court believes *Ramirez*'s reinterpretation was dicta. *Ra*mirez involved a § 1983 case, and held 'that the favorable termination rule [did] not apply to § 1983 suits challenging a disciplinary hearing or administrative sanction that does not affect the overall length of the prisoner's confinement.' The court in *Ramirez* merely went on to discuss the availability of habeas jurisdiction in light of this holding. This was based on the assumption that jurisdiction under §§ 1983 and 2254 are mutually exclusive. As discussed in *Docken*, this assumption was not well-founded.").

to any such programs while confined in the SHU and will not be able to participate in any rehabilitative programs until he is returned to the general prison population." Pet. at 11. In further support of his position that being in the SHU effectively makes parole impossible, Mr. Chavez has submitted an attorney declaration which states that, between January 1, 2000, and November 30, 2010, there were 1,405 parole hearings for life-term prisoners at Pelican Bay State Prison and, of those 1,405 scheduled hearings, "no prisoner was granted parole." Docket No. 3 (Master Decl. ¶ 5). Because Mr. Chavez has alleged and further offered some evidence that his confinement in the SHU has a material effect on the length of his sentence, the Court concludes that Mr. Chavez has made an adequate showing that habeas relief is possible.

The cases cited by the state in its motion, *see* Mot. at 8, do not compel a different conclusion. For the most part, they largely rely on the "necessary" language that the Ninth Circuit used in *Ramirez*, which, as discussed above, conflicts with the "likelihood" language used in *Ramirez* and, later, in *Docken*.

### III. CONCLUSION

For the foregoing reasons, the Court denies the state's motion to dismiss. The Court orders the state to answer Mr. Chavez's petition (in accordance with Section 2254 Rule 5 and Habeas Corpus Local Rule 2254-6) within 60 days of the date of this order. *Cf.* Habeas Corpus L.R. 2254-6(b) (providing that, "[a]fter the Court orders a response to the petition, within 60 days of service of a noncapital petition, the respondent shall serve and file thereafter, *inter alia*, an answer). Within 30 days after the state has filed its answer, Mr. Chavez may file a traverse. *Cf.* Habeas Corpus L.R. 2254-6(c) (providing that, "[w]ithin 30 days after the respondent has filed the answer, the petitioner may serve and file a traverse").

This order disposes of Docket No. 11.

IT IS SO ORDERED.

Dated: February 17, 2012

_____
EDWARD M. CHEN
United States District Judge