UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUMBERTO CHAVEZ, | No. C-11-0376 EMC |
| Petitioner, | |
| v. | **ORDER DENYING PETITION FOR HABEAS CORPUS** |
| GREG LEWIS, | |
| Respondent. | |

The instant case is a habeas petition which Humberto Chavez filed pursuant to 28 U.S.C. § 2254. Mr. Chavez is currently in custody at the Pelican Bay State Prison where he is housed in the Security Housing Unit ("SHU") based on his alleged gang affiliation. Mr. Chavez seeks transfer out of the SHU and into the general prison population because, as explained in his petition, in order to be released on parole, "he needs to participate in rehabilitative self-help and vocational programming" but "[h]e has no access to any such programs while confined in the SHU and will not be able to participate in any rehabilitative programs until he is returned to the general prison population." Pet. at 11. As grounds for habeas relief, Mr. Chavez asserts, *inter alia*, that, when the California Department of Correction and Rehabilitation ("CDCR") decided to continue his placement in the SHU, his due process rights were violated as well as his right to free exercise of religion as protected by the First Amendment of the federal Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

///

///

Having considered the petition, answer, traverse, and supporting memoranda, as well as the supporting exhibits and all other evidence of record, the Court hereby **DENIES** Mr. Chavez's petition for relief.

## I. FACTUAL & PROCEDURAL BACKGROUND

As reflected in the parties' submissions, the parties do not dispute the following facts. In 1981, Mr. Chavez was convicted of first-degree murder. *See* Pet. ¶ 2; Answer ¶ 1. In or about 1989 or 1990, Mr. Chavez was suspected of being involved with prison gang activity and was validated as a prison gang associate. *See* Pet. at 7; Answer ¶ 2. Mr. Chavez was subsequently revalidated as a prison gang associate. *See* Pet. at 7; Answer ¶ 2. Currently, Mr. Chavez is housed indefinitely in the SHU in Pelican Bay based on his validation. *See* Answer, Ex. 10 (CDCR 128G). The prison gang with which Mr. Chavez is allegedly affiliated is EME, also known as the Mexican Mafia.

In September 2008, Mr. Chavez appeared before the prison's Institutional Classification Committee ("ICC") for the annual review of his custody/classification status. *See* Pet. at 9; Answer ¶ 4. At that time, ICC continued his placement in SHU because of his alleged continued association with the prison gang. *See* Pet. at 9; Answer ¶ 4 & Ex. 10 (CDCR 128G). The ICC took note that, in April 17, 2007, Mr. Chavez had been revalidated as an associate of the prison gang. That validation document stated that

> [t]he following items meet the validation requirements:
>
> 1.   CDC-128B dated 3/19/07 (Only those items that contain the Mactlactlomei symbol of 3 dots over 2 lines).

Answer, Ex. 4 (CDC 128-B-2). The "CDC-128B dated 3/19/07" was a report that had been prepared by a correctional officer working for the Institutional Gang Investigations unit. In the report, the officer noted that Mr. Chavez's property had been searched and two documents had been found which contained the Mactlactlomei symbol: (1) an original drawing and (2) a page from a calendar which displayed a piece of inmate art. The correctional officer explained that the Mactlactlomei symbol is the Mayan symbol for the number 13; that the symbol and number correspond to the thirteenth letter of the alphabet which is "M"; that "M" in Spanish is pronounced "EME"; and that Southern Mexican or Sureño gang members who associate themselves with the

2

prison gang EME use the symbol to show their loyalty and allegiance to the EME. *See* Answer, Ex. 5 (CDC 128 B). As discussed *infra*, Mr. Chavez disputes that the calendar page drawing contains the Mactlactlomei symbol. According to Mr. Chavez, the symbol on the calendar page depicts three dots over one line (not two lines) and is the Mayan symbol for the number 8.[1] *See* Traverse at 2.

On April 6, 2009, Mr. Chavez initiated a habeas petition in state superior court, challenging his continued retention in the Pelican Bay SHU. The superior court denied the petition on July 24, 2009, stating as follows: "Sufficient evidence supported the administrative decision. The Department of Corrections is entitled to use its expertise in determining what symbols and indicia gangs are currently using." Pet., Ex. A (order). Subsequently, Mr. Chavez filed a habeas petition with the state appellate court. That petition was summarily denied on March 25, 2010. *See* Pet., Ex. B (order). After Mr. Chavez filed a habeas petition with the California Supreme Court, that petition was also summarily denied on June 9, 2010. *See* Pet., Ex. C (order).

Mr. Chavez then petitioned this Court for relief. The government moved to dismiss the petition, both as an untimely petition and as an improper habeas petition. The Court denied the motion to dismiss, holding, *inter alia*, that the issue of equitable tolling needed to be resolved after development of a factual record. The Court ordered the government to respond to the petition on the merits, which it did. Mr. Chavez then filed his traverse. The Court now reviews the filings before it to determine whether Mr. Chavez is entitled to any relief, proceeding with the assumption that there is no time bar to the petition.

## II. DISCUSSION

A. Legal Standard

This Court is required to analyze state habeas corpus claims under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a court may entertain a petition for writ of habeas corpus "[on] behalf of a person in custody pursuant to the judgment of a State

---

[1] To the extent Mr. Chavez argues that the CDCR based its revalidation decision on the original drawing alone and not the calendar page drawing as well, *see, e.g.*, Traverse ¶ 3, the Court does not agree. The CDCR stated that "those *items* that contain the Mactlactlomei of 3 dots over 2 lines" met the validation requirements. Answer, Ex. 4 (CDC 128-B-2) (emphasis added). By using the plural "items" rather than the singular "item," the CDCR clearly indicated its belief that there was more than one item that contained the Mactlactlomei symbol.

3

1  court only on the ground that he is in custody in violation of the Constitution or laws or treaties of
2  the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim
3  that was adjudicated on the merits in state court unless the state court's adjudication of the claim:
4  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly
5  established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in
6  a decision that was based on an unreasonable determination of the facts in light of the evidence
7  presented in the State court proceeding." *Id.* § 2254(d).

8  In the instant case, Mr. Chavez appears to be making a claim pursuant to § 2254(d)(1) only.
9  Under § 2254(d)(1), a state court decision is "contrary" to Supreme Court authority if "the state
10 court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or
11 if the state court decides a case differently than [the Supreme] Court has on a set of materially
12 indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an
13 "unreasonable application of" Supreme Court authority if "the state court identifies the correct
14 governing legal principle from [the Supreme] Court's decisions but unreasonably applies that
15 principle to the facts of the prisoner's case." *Id.* A district court "may not issue [a] writ [of habeas
16 corpus] simply because that court concludes in its independent judgment that the relevant state-court
17 decision applied clearly established federal law erroneously or incorrectly. Rather, that application
18 must also be unreasonable." *Id.* at 411; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (noting
19 that a decision challenged as an unreasonable application of Supreme Court law must not merely be
20 erroneous, but "objectively unreasonable").

21 In determining whether the state court's decision is contrary to, or involved an unreasonable
22 application of, clearly established federal law, a federal court looks to the decision of the highest
23 state court to address the merits of a petitioner's claim in a reasoned decision. *See LaJoie v.*
24 *Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). Where the state court reaches a decision on the
25 merits but provides no reasoning to support its conclusion, a federal habeas court independently
26 reviews the record to determine whether habeas corpus relief is available under § 2254(d). *See*
27 *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011). However, the habeas petitioner still has the
28

burden of "showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

In the instant case, Mr. Chavez argues that he is entitled to habeas relief because, when the CDCR decided in 2008 to continue his placement in the SHU based on the 2007 gang revalidation, both his due process rights and his right to free exercise of religion were violated. In addition, Mr. Chavez argues that the CDCR's gang validation regulation is both unconstitutionally vague and overbroad.

B.  Due Process

Mr. Chavez argues first that his due process rights were violated because the 2007 revalidation decision was based on insufficient evidence. On this claim, the last reasoned decision was that of the state superior court which stated that "[s]ufficient evidence supported the administrative decision" and that "[t]he Department of Corrections is entitled to use its expertise in determining what symbols and indicia gangs are currently using." Pet., Ex. A (order). In other words, the state court indicated in its decision that Mr. Chavez had a cognizable liberty interest in being free from the SHU[2] but that there was enough evidence in the record to deprive Mr. Chavez of that interest. The Court concludes that this decision was not an unreasonable application of clearly established federal law, as established by the Supreme Court.

Due process requires that, when prison officials decide to deprive an inmate of a liberty interest, they do so on the basis of "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (stating that "the requirements of due process are satisfied if some evidence supports the

---

[2] This Court agrees. Mr. Chavez has asserted that his placement in SHU "'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,'" *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), because (1) his placement there is indefinite in duration and (2) he does not have access there to rehabilitative programs – programs that he must participate in before he can be released on parole. This situation makes Mr. Chavez's case comparable to *Wilkinson*, where the Supreme Court held that inmates had a liberty interest in avoiding assignment to Ohio State Penitentiary, the state's only Supermax facility, because the conditions there imposed an atypical and significant hardship. The conditions in *Wilkinson* on which the Supreme Court focused were similar to those here – *i.e.*, (1) the indefinite duration of the assignment and (2) the disqualification of otherwise eligible inmates for parole consideration. *See id.*; *see also Lira v. Cate*, No. C 00-0905 SI, 2009 U.S. Dist. LEXIS 91292, at *73-74 (N.D. Cal. Sept. 30, 2009) (finding administrative segregation in Pelican Bay's SHU comparable to that in the Ohio State Penitentiary, as addressed in *Wilkinson*, and thus "find[ing] that plaintiff had a protected liberty interest in avoiding confinement in administrative segregation").

5

1  decision by the prison disciplinary board to revoke good time credits"); *Bruce v. Ylst*, 351 F.3d 1283
2  (9th Cir. 2003) (in § 1983 case in which plaintiff claimed that "he was denied due process because
3  prison officials did not have sufficient evidence to validate him as a member of the BGF prison
4  gang," applying "some evidence" standard in *Hill*); *Lira*, 2009 U.S. Dist. LEXIS 91292, at *91 (in
5  habeas case, stating that, "when prison officials decide to deprive an inmate of the liberty interest of
6  remaining free from administrative segregation, they do so on the basis of 'some evidence on the
7  record'"). Under Supreme Court precedent, this translates to whether there is "*any* evidence in the
8  record that could support the conclusion" reached by prison officials. *Hill*, 472 U.S. at 455-56
9  (emphasis added).
10  Here, it was not unreasonable for the state court to conclude that there were two pieces of
11  evidence in the record that could support the conclusion that Mr. Chavez had a gang affiliation: (1)
12  his possession of an original drawing that contained the Mactlactlomei symbol and (2) his
13  possession of a calendar page drawing that also contained the Mactlactlomei symbol.
14  In his papers, Mr. Chavez challenges the reliance on both pieces of evidence. First, he
15  argues that it was unfair for the CDCR to validate him on the basis of the original drawing because
16  he had displayed that drawing in his cell for fifteen years without suffering any adverse
17  consequences. *See, e.g.*, Traverse at 7 (contending that "prison staff never took issue with the
18  drawing until they had exhausted all other items they thought potentially linked [him] to gang
19  membership"). The problem for Mr. Chavez is that he has not pointed to any evidence to support his
20  claim that the drawing had been on display for fifteen years. The fact that the government did not
21  challenge Mr. Chavez's claim (*i.e.*, that he had displayed the drawing for fifteen years) during the
22  state habeas proceedings is immaterial. Even if the government if did not voice an objection during
23  the state proceedings, the state court could have, on its own, taken into account the lack of
24  evidentiary support for Mr. Chavez's claim. Moreover, even if the drawing had been on display for
25  this period of time, it is possible that prison officials did not until recently notice the Mactlactlomei
26  symbol contained in the drawing given that the symbol was not the focal point of the drawing but
27  rather was incorporated into the Aztec emperor's belt or sash. *See* Answer., Ex. 5 (drawing);
28  Answer, Ex. 6 (Hawkes Decl. ¶ 7) (in declaration submitted in support of government's opposition

1   to state superior court habeas petition, stating that "[i]t is common practice for validated members
2   and associates to attempt to disguise the Mactlactlomei symbol in artwork"). There is no evidence
3   in the record to show that, prior to 2007, prison officials were aware that the drawing contained the
4   Mactlactlomei symbol but declined to take any action against Mr. Chavez for the display of that
5   symbol.

6       As for the calendar page drawing, Mr. Chavez contends that it does not even contain the
7   Mactlactlomei symbol in the first place.[3] According to Mr. Chavez, the calendar page drawing
8   actually shows the Mayan symbol for the number 8, which is three dots over one line (and not two).
9   The Court has examined the symbol on the calendar page drawing and notes that the symbol could
10  be viewed as containing either one line or two lines. The question for the Court, however, is
11  whether it was unreasonable for the state court to have viewed the symbol on the calendar page
12  drawing as containing two lines instead of one. The Court cannot so conclude because the CDCR
13  has expertise in identifying what symbols and indicia gangs are using. Thus, the calendar page
14  drawing constitutes additional evidence to support CDCR's gang validation decision. Because the
15  symbol alone is evidence that supports the gang validation decision, the Court need not entertain Mr.
16  Chavez's additional argument that there is no evidence to support the prison official's statement that
17  the artist who drew the picture was a validated gang member (*i.e.*, Daniel Grajeda)[4] and that further
18  discovery on the issue is warranted. *See* Traverse ¶ 3.

19      To the extent Mr. Chavez suggests that, at the very least, there is a factual dispute as to
20  whether the symbol in the calendar page drawing has one or two lines and that discovery is needed
21  to explore this issue, the Court does not agree. Rule 6(a) of the Rules Governing Section 2254

---

[3] Mr. Chavez did not raise this argument in his opening memorandum. *See* Pet. Memo. at 4 (simply arguing that "[o]ne of the other images was a page from a calendar that Mr. Chavez had purchased and which the CDCR approved and allowed him to possess"). Rather, the argument was raised for the first time in his traverse. Mr. Chavez did, however, raise this argument as part of his state superior court habeas petition. *See* Answer, Ex. 13 (Pet. at 3-4 n.3). He also raised this argument as part of his state appellate court habeas petition. *See* Answer, Ex. 15 (Pet. at 5 n.3).

[4] *See* Answer, Ex. 5 (CDC-128 B) (stating that, "within the art collection, the following inmate art is displayed: Daniel GRAJEDA, C-39195, a.k.a. 'Cuate,' validated EME member").

7

Cases provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure."

> The Supreme Court has stated that Rule 6(a) "is meant to be 'consistent'" with its holding in *Harris v. Nelson*, 394 U.S. 286 (1969), in which the Court held that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." Likewise, [the Ninth Circuit has] held that a district court abused its discretion in not ordering Rule 6(a) discovery when discovery was "essential" for the habeas petitioner to "develop fully" his underlying claim.

*Dung The Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005). Here, the discovery sought by Mr. Chavez is not essential because, even if the Court were to exclude consideration of the calendar page drawing, the original drawing containing the Mactlactlomei symbol constitutes "some evidence" to support the CDCR's actions. *See Bruce*, 351 F.3d at 1288 (holding that "[t]he district court correctly noted that under the 'some evidence' standard, *any* of these three pieces of evidence would have sufficed to support the validation because each has sufficient indicia of reliability") (emphasis added). For similar reasons, Mr. Chavez's contention that it was unfair for CDCR to validate him based on a calendar it had allowed him to purchase is unavailing.

C.  RLUIPA and First Amendment

Second, Mr. Chavez argues that the gang revalidation and subsequent SHU designation by CDCR violated his right of religious free exercise as protected by RLUIPA and the First Amendment of the Constitution.[5] The Court addresses Mr. Chavez's RLUIPA argument first and then turns to the First Amendment argument.

1.  RLUIPA

As a preliminary matter, the Court notes that the last reasoned state court decision – *i.e.*, the decision of the state superior court – did not expressly address Mr. Chavez's RLUIPA argument. As

---

[5] To the extent that Mr. Chavez makes a free exercise claim based on the California Constitution, such a claim is not cognizable in federal habeas review. *See*, *e.g.*, *Swarthout v. Cooke*, 131 S. Ct. 859, 861-62 (2011) (noting that the Supreme Court has repeatedly held that the federal habeas writ is unavailable for violations of state law or for alleged error in the interpretation or application of state law); *see also* 28 U.S.C. § 2254(a) (providing that a petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States").

8

noted above, all that the state superior court stated in its decision was that "[s]ufficient evidence supported the administrative decision" and that "[t]he Department of Corrections is entitled to use its expertise in determining what symbols and indicia gangs are currently using." Pet., Ex. A (order).

Given this circumstance, the Court must apply the Supreme Court's directive in *Harrington*, 131 S. Ct. at 770 – *i.e.*, that, when confronted with a summary denial, a court "must determine what arguments or theories supported . . . or could have supported the state court's decision" and then "must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 786. Under RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . , even if the burden results from a rule of general applicability," unless the burden furthers "a compelling government interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a). Here, the state superior court could have found that there was no substantial burden on the religious exercise of Mr. Chavez, and fairminded jurists could disagree as to whether there was a substantial burden under clearly established Supreme Court precedent.

In reaching this conclusion, the Court begins by noting that it may take guidance as to what constitutes a substantial burden from Supreme Court precedent dealing with the First Amendment and the Religious Freedom Restoration Act ("RFRA").[6] *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 436 (2006) (stating that RLUIPA "allows federal and state prisoners to seek religious accommodations pursuant to the same standard as set forth in RFRA"); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 760 (7th Cir. 2003) (pointing out that "RLUIPA's legislative history indicates that it is to be interpreted by reference to RFRA and First Amendment jurisprudence").[7] However, RLUIPA is distinct from RFRA (as it

---

[6] The Court thus rejects the government's suggestion that the only potentially relevant Supreme Court precedent is *Cutter v. Wilkinson*, 544 U.S. 709 (2005) (upholding constitutionality of RLUIPA against facial challenge that the protection extended by the statute violated the Establishment Clause).

[7] In the First Amendment context, the Supreme Court has found a substantial burden as "[w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs."

existed prior to the passage of RLUIPA) and the First Amendment in that RLUIPA specifically defines religious exercise to mean "*any* exercise of religion, *whether or not compelled by, or central to*, a system of religious belief."[8] *Id.* § 2000cc-5(7)(A) (emphasis added); *see also Cutter*, 544 U.S. at 725 n.13 (stating that "RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion," although adding that "the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity"). This broad definition of religious exercise is, as the Sixth Circuit has noted, in tension with Supreme Court First Amendment jurisprudence "which suggests that a 'substantial burden' is a difficult threshold to cross." *Living Water Church of God v. Charter Twp. Meridian*, 258 Fed. Appx. 729, 736 (6th Cir. 2007).

      Perhaps as a way of dealing with this tension, several circuit courts have, in evaluating whether there is a substantial burden under RLUIPA, taken into account whether the religious practice – though not mandated by or central to the system of religious belief – is still considered important to the individual's free exercise of religion. *See, e.g.*, *Mahoney v. Doe*, 642 F.3d 1112, 1121 (D.C. Cir. 2011) (acknowledging that RLUIPA amended RFRA's "definition of 'exercise of religion' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief'" but stating that, nevertheless, "'[RLUIPA] did not alter the propriety of inquiring into the importance of a religious practice when assessing whether a substantial burden exists'"); *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316 (10th Cir. 2010) (stating that "'[t]he practice burdened need not be central to the adherent's belief system, but the adherent must have an honest belief that the practice is important to his free exercise of religion'"); *Adkins v. Kaspar*, 393 F.3d 559, 569-70 (5th Cir. 2004) ("emphasiz[ing] that no test for the presence of a 'substantial burden' in the RLUIPA context may require that the religious exercise that is claimed to be thus burdened be central to the adherent's religious belief system" because of RLUIPA's definition of religious exercise; but adding that "the Supreme Court's express disapproval of any test that would require a court to divine the centrality of a religious belief does not relieve a complaining adherent of the

---

*Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981).

[8] "Prior to the passage of RLUIPA in 2000, RFRA provided that "'the term "exercise of religion" means the exercise of religion under the First Amendment to the Constitution.'" *Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1095 (9th Cir. 2008).

10

1 burden of demonstrating the honesty and accuracy of his contention that the religious practice at
2 issue is important to the free exercise of his religion"); *cf. Ford v. McGinnis*, 352 F.3d 582, 593-94
3 (2d Cir. 2003) (proceeding with the assumption that a substantial burden analysis is applicable to a
4 First Amendment free exercise claim; stating that "[t]he relevant question in determining whether
5 [plaintiff's] religious beliefs were substantially burdened is whether participation in the Eid ul Fitr
6 feast, in particular, is considered central or important to [plaintiff's] practice of Islam").

That some courts have adopted this approach indicates that it would not have been unreasonable for the state superior court to take into consideration the importance of the religious practice to Mr. Chavez's free exercise of religion in evaluating whether there was a substantial burden on his rights as protected by RLUIPA. *See Clark v. Murphy*, 331 F.3d 1062, 1071 (9th Cir. 2003) (noting that "[t]he very fact that circuit courts have reached differing results on similar facts leads inevitably to the conclusion that the [state] court's rejection of [the habeas petitioner's] claim was not objectively unreasonable"). Here, even if Mr. Chavez's display or possession of the two pictures containing the Mactlactlomei symbol constituted a religious practice, there is no evidence in the record to indicate that this religious practice was of such importance to his free exercise of religion that the burden in not being allowed to display the pictures should be considered substantial. For example, when interviewed about the pictures by CDCR, Mr. Chavez did not make any such assertions.[9] *See* Pet., Ex. H at 2 (CDC 128B).

Accordingly, the Court concludes that the state court's decision on Mr. Chavez's RLUIPA claim was not an unreasonable application of clearly established federal law as determined by the Supreme Court.

### 2. First Amendment

As for Mr. Chavez's First Amendment argument, it fares no better. In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court held that, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological

---

[9] Because the state court could have rejected the RLUIPA claim based on Mr. Chavez's failure to establish a substantial burden on his rights, and because that decision was not unreasonable, the Court need not address Mr. Chavez's contention that there is a factual dispute as to whether the burden furthers a compelling government interest by the least restrictive means. *See* Traverse ¶ 17(c).

interests." *Id.* at 89; *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (noting that "[t]he burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it"). Therefore, under *Turner*, while the First Amendment guarantees the right to the free exercise of religion, that right

> is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security. In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests.

*Curry v. Cal. Dep't of Corr.*, No. C-09-3408 EMC (pr), 2012 U.S. Dist. LEXIS 38464, at *24-25 (N.D. Cal. Mar. 21, 2012).

Here, as discussed above, it would not have been unreasonable for the state court to conclude that Mr. Chavez has failed to establish that his right to free exercise was substantially burdened. *See Hall v. Ekpe*, 408 Fed. Appx. 385, 388 (2d Cir. 2010) (stating that "a prisoner mounting a free-exercise challenge 'must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs'"); *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (stating that, to allege a constitutional violation based on a free exercise claim, a "prisoner-plaintiff must first show that a prison regulation 'substantially burdened . . . sincerely-held religious beliefs'"); *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005) (stating that an inmate making a free exercise claim "must first establish that his right to practice [the religion] was burdened in a significant way"). *But see Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003) (finding "no support" for defendants' assertion that an inmate must "establish that the challenged prison policy 'substantially burdens' his or her religious beliefs").

Furthermore, even assuming that Mr. Chavez's practice of his religion was burdened, it would not have been unreasonable for the state court to conclude that the burden was justified because it was reasonably related to legitimate penological interests. Clearly, the CDCR has a legitimate interest in maintaining prison security and preventing prison gang violence. *See, e.g.*, *Cutter* 544 U.S. at 725 n.13 (stating that "prison security is a compelling state interest, and that deference is due to institutional officials' expertise in this area"); *Martinez v. Fischer*, No. CIV S-

10-0366 GGH P, 2011 WL 4543191, at *8 (E.D. Cal. Sept. 28, 2011) (noting that "[p]rison officials have a valid interest in preventing prison gang violence"). Furthermore, it is neither arbitrary nor irrational for the CDCR to identify inmates as gang associates based on their use of gang symbols, even if those symbols also have or may have religious significance. Furthermore, Mr. Chavez has not shown that he lacks "'alternative means by which he can practice his religion'" or has been "'denied all means of religious expression,'" *Shakur v. Schriro*, 514 F.3d 878, 886 (9th Cir. 2008); nor he has shown that there is a "ready alternative that fully accommodates [his] rights at de minimis cost to [the CDCR's] valid penological interests." *Turner*, 482 U.S. at 91.

Thus, this Court finds that it would not be unreasonable for the state court to conclude that Mr. Chavez failed to establish a violation of his First Amendment rights.

D.      Vagueness and Overbreadth

Finally, Mr. Chavez challenges a part of the CDCR's gang validation regulation as being both impermissibly vague and overbroad. More specifically, Mr. Chavez challenges 15 California Code of Regulations § 3378(c)(8)(B), which provides as follows:

> (c)     Gang involvement allegations shall be investigated by a gang coordinator/investigator or their designee.
>
> (8)     The determination of a gang identification shall reference each independent source item in the inmate/parolee's central file. The sources shall be based on the following criteria:
>
> . . . .
>
> (B)     Tattoos and symbols. Body markings, hand signs, distinctive clothing, graffiti, etc., which have been identified by gang investigators as being used by and distinctive to specific gangs. Staff shall describe the tattoo or symbol and articulate why it is believed that the tattoo or symbol is used by and distinctive of gang association or membership. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

15 Cal. Code Reg. § 3378(c)(8)(B). Mr. Chavez contends that the regulation is void for vagueness because it does not give inmates advance notice of what the prohibited gang symbols. He further

contends that the regulation is overbroad because it "prohibits the lawful conduct of using Mesoamerican glyphs." Pet. Memo. at 10.

### 1. Vagueness

A statute or regulation may be challenged on due process grounds as being impermissibly vague. The due process doctrine of vagueness "incorporates notions of fair notice or warning." *Smith v. Goguen*, 415 U.S. 566, 572-73 (1974). It also incorporates a requirement that specificity be sufficient to avoid arbitrary and discriminatory enforcement. *See id.* at 573-73.

In its decision denying habeas relief, the state superior court did not expressly address Mr. Chavez's vagueness argument. Accordingly, this Court must once again "determine what arguments or theories supported . . . or could have supported the state court's decision" and then "must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington*, 131 S. Ct. at 786.

Here, the state superior court could have rejected Mr. Chavez's vagueness argument because, as discussed above, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89; *see also Bahrampour v. Lampert*, 356 F.3d 969, 975-76 (9th Cir. 2004) (applying *Turner* test despite inmate's assertion that vagueness and overbreadth claims must be considered separate and apart from application of *Turner* test). As stated above, the CDCR clearly has a legitimate interest in preventing prison gang violence. Furthermore, the Court would be hard pressed to say there is not a "'valid, rational connection'" between the CDCR's legitimate governmental interest and § 3378(c)(8)(B), which is targeted at identifying whether an inmate is affiliated with a prison gang. *See id.* at 89-90 (adding that "a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational").

To the extent Mr. Chavez suggests that there is a ready alternative that could be followed instead – *i.e.*, inmates could be given advance notice of what the prohibited gang symbols are – *Turner* instructs that the alternative must be "at de minimis cost to [the] valid penological interest[]." *Id.* at 91. It would not have been unreasonable for the state court to find that Mr. Chavez's proposed

1 alternative would impose more than a de minimis cost as, arguably, prison officials must have the
2 "necessary and appropriate discretion to respond to the constantly changing ways in which gang
3 affiliation may be expressed." *Lindell v. Frank*, No. 05-C-003-C, 2005 U.S. Dist. LEXIS 4353, at
4 *27 (W.D. Wisc. Mar. 8, 2005); *cf. Bethel Sch. Dist. v. Fraser*, 478 U.S. 675, 686 (1986) (stating
5 that, "[g]iven the school's need to be able to impose disciplinary sanctions for a wide range of
6 unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be
7 as detailed as a criminal code which imposes criminal sanctions"). In short, it is hard to see how the
8 regulation could be made less vague without compromising the legitimate penological interests of
9 the CDCR.

### 2. Overbreadth

Of course, Mr. Chavez makes not only a vagueness challenge to § 3378(c)(8)(B) but also an overbreadth challenge, *i.e.*, because the regulation "prohibits the lawful conduct of using Mesoamerican glyphs." Pet. Memo. at 10.

> Overbreadth . . . "offends the constitutional principle that "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." A vague statute may be overbroad if its uncertain boundaries leave open the possibility of punishment for protected conduct and thus lead citizens to avoid such protected activity in order to steer clear of the uncertain proscriptions. A statute is also overbroad, however, if, even though it is clear and precise, it prohibits constitutionally protected conduct.

*Karlan v. Cincinnati*, 416 U.S. 924, 925 (1974); *see also Aptheker v. Secretary of State*, 378 U.S. 500, 508 (1964) (noting that, "'[e]ven though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved'"). For purposes of this opinion, the Court assumes that Mr. Chavez is implicating his free speech rights or other fundamental liberties.

While the state superior court clearly did not address the vagueness claim in its decision, arguably, it did address the overbreadth claim (at least in part) by stating that "[t]he Department of Corrections is entitled to use its expertise in determining what symbols and indicia gangs are currently using." Pet., Ex. A (order). Similar to above, the Court cannot say that this was an

unreasonable application of clearly established federal law, as determined by the Supreme Court. Under the *Turner* standard, it was not unreasonable for the state court to conclude that the regulation is reasonably related to legitimate penological objectives. This is particularly true given that Mr. Chavez has not identified a ready alternative that could have been adopted by the CDCR – *e.g.*, what should the CDCR do when a Mesoamerican glyph has been coopted by a prison gang?[10] Mr. Chavez's citation to *Procunier v. Martinez*, 416 U.S. 396 (1974), is unavailing because, as the Supreme Court explained in *Turner*, its holding in *Martinez* "turned on the fact that the challenged [prison] regulation caused a consequential restriction on the First and Fourteenth Amendment rights of those who are *not* prisoners. We expressly reserved the question of the proper standard of review to apply in cases involving questions of prisoners' rights." *Turner*, 482 U.S. at 85-86 (emphasis in original; internal quotation marks omitted).

E.  Request for Evidentiary Hearing

To the extent Mr. Chavez has asked for an evidentiary hearing, that request for relief is denied. The Supreme Court made clear in *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits" and that, "when the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Id.* at 1398-99. *Compare, e.g.*, *Johnson v. Finn*, 665 F.3d 1063, 1069 n.1 (9th Cir. 2011) (stating that "[t]he evidentiary hearing in this case was not of the sort barred by *Cullen*" because the magistrate judge had "properly determined that the California Court of Appeal's decision did not qualify for deference under [§ 2254(d)(1)]"). The cases on which Mr. Chavez relies to support his request for an evidentiary hearing are not applicable because they are pre-AEDPA cases. *See* Traverse ¶ 16.

As noted above, Mr. Chavez appears to be making a § 2254(d)(1) claim alone. However, even to the extent he may be making a § 2254(d)(2) claim, he is no better off. Most courts have held that § 2254(d)(2) claims must also be based on record before the state court. *See, e.g.*, *Blue v. Thaler*, 665 F.3d 647, 656 n.26 (5th Cir. 2011); *Lor v. Felker*, No. CIV S-08-2985 GEB DAD P,

---

[10] The Court notes that Mr. Chavez was given an opportunity to present his views on the documents identified by the CDCR as having gang affiliation implications. *See* Pet., Ex. H (CDC 128-B).

2012 U.S. Dist. LEXIS 64058, at *14-15 (E.D. Cal. May 7, 2012). Thus, as with a § 2254(d)(1) claim, a district court is not required to hold an evidentiary hearing if a petitioner cannot establish a § 2254(d)(2) violation based on the record before the state court. *See id.* at *15 (stating that an evidentiary hearing would be "futile" unless the federal court determines that "the state court unreasonably determined the facts"). Here, for example, even if the state court implicitly found the symbol on the calendar page drawing to be the Mactlactlomei (and not the Mayan symbol for the number 8), Mr. Chavez has not established that that finding was unreasonable based on the record before the court. *See Torres v. Prunty*, 223 F.3d 1103, 1108 (9th Cir. 2000) (noting that a petitioner is not entitled to relief under § 2254(d)(2) simply because he has the better of two reasonable arguments; a court must have a "firm conviction that the determination made by the state court was wrong and that the one [the petitioner] urges was correct") (internal quotation marks omitted). Moreover, as discussed above, regardless of the calendar page drawing, the CDCR's decision to revalidate Mr. Chavez as a prison gang associate was supported by the original drawing he had in his cell. In *West v. Ryan*, 608 F.3d 477 (9th Cir. 2010), the Ninth Circuit noted that, "[t]o obtain an evidentiary hearing in district court, a habeas petitioner must . . . allege a colorable claim for relief" – *i.e.*, "allege facts that, if true, would entitle him to habeas relief." *Id.* at 485. No evidentiary hearing is warranted here because, in light of the other evidence supporting the CDCR's determination, the dispute as to the symbol on the calendar page is not material. *See also Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (stating that, "under § 2254(d)(2), a federal court may . . . grant a writ of habeas corpus if a *material* factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding'") (emphasis added).

///
///
///
///
///
///

17

### III. CONCLUSION

For the foregoing reasons, the Court denies Mr. Chavez's petition for habeas relief. In addition, the Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Clerk shall close the file.

IT IS SO ORDERED.

Dated: July 13, 2012

_____
EDWARD M. CHEN
United States District Judge